380 A.2d 341

**COMMONWEALTH of Pennsylvania**

v.

**Eugene R. SHAFFER, Appellant.**

Supreme Court of Pennsylvania.

Submitted May 23, 1977.
Decided Dec. 1, 1977.

Laurence T. Himes, Jr., York, for appellant.

Donald L. Reihart, Dist. Atty., Daniel F. Wolfson, Asst. Dist. Atty., York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

PACKEL, Justice.

This case presents the issue of whether the rejection of the services of a public defender in purported reliance on the advice of a para-professional law clinic in a prison constituted a valid waiver of counsel. The issue is of importance because of the increasing use of para-professionals as still another method of assuring prisoners a meaningful access to the courts. "Among the alternatives are the training of inmates as paralegal assistants to work under lawyers' supervision, the use of paraprofessionals and law students, either as volunteers or in formal clinical programs . . ." *Bounds v. Smith,* 430 U.S. 817, 831, 97 S.Ct. 1491, 1499, 52 L.Ed.2d 72 (1977).

The facts were developed at a post-conviction hearing of the appellant, who had been convicted of murder in the first degree and sentenced to life imprisonment. After a direct appeal from the sentence, the appellant followed the suggestion of the representative of the Para-Professional Law Clinic in Graterford Prison and several times demanded that the public defender send him the trial transcript. Notwithstanding the defender's repeated remonstrances that he could not handle the appeal properly without the notes of

testimony, the appellant insisted that he must have the notes even though he understood that his attorney could not continue to represent him. The appellant, in receiving the notes of testimony, signed the following statement:

"Knowing that the Public Defender's Office would be handicapped without my records, I still desire to have them and specifically request they be forwarded to me with the understanding that the Public Defender's Office will not be able to represent me in the future."

The record shows that this Court had continued the argument on the direct appeal because no one appeared for the appellant. The appellant then asked for the appointment of counsel. The same public defender was reappointed. Thereafter, he requested the return of the notes of testimony. Because of non-compliance he requested this Court for leave to withdraw from the appeal. Permission was granted.

The appellant by letter to the trial judge again asked for the appointment of counsel for the appeal. Counsel was not appointed. The appellant did nothing further for some twenty-nine months and this Court, after the grant of three continuances during that period, filed a judgment of non pros. Subsequently, the post-conviction hearing petition was filed and the appellant was furnished independent counsel.

 The right to counsel for an appeal is not unqualified. For example, an appellant entitled to free counsel is not necessarily entitled to counsel of his own choice. *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968). Without elaborating on other limitations on the right to counsel for an appeal, the appellant's informed rejection of appointed counsel by virtue of his conduct did not entitle him to another counsel to continue with the appeal. Refusal, without good cause shown, to accept the counsel twice appointed by the court was properly treated as a competent and intelligent waiver of the right to counsel.

■ The deliberate disregard of the advice of appointed counsel which leads to the loss of his services, without good cause shown, is not to be excused because of a purported and unjustifiable reliance on the advice of non-lawyers. Therefore, a conclusion of ineffective assistance of counsel is unwarranted in this case.

A remaining question is whether the right of direct appeal has been improperly denied to the appellant. He chose not to deal with the public defender appointed for him and on December 31, 1970, asked this Court for a continuance, which was granted. A second continuance was granted by this Court on April 29, 1971, and again the public defender was appointed to help him. This help was again refused. This Court granted a third continuance on May 8, 1972. Finally on May 21, 1973, this Court entered a judgment of non pros.

■ An appellant who without justification chooses to refuse to deal with his appointed counsel is still subject to the orderly administration of justice. He cannot properly assert additional privileges because he chooses to be without counsel appointed for him in order to get other counsel. Even though he was a lay person, this Court acted properly in bringing the appeal to an end when, after three continuances, there was no further prosecution of the appeal. The record establishes no valid reason for an attack of the judgment of non pros entered by this Court.

The dismissal of the post-conviction hearing petition is affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joined.

NIX, J., dissents.

ROBERTS, Justice, dissenting.

I would reverse the decision of the Post Conviction Hearing Court, and grant appellant an appeal as if timely filed, because appellant never knowingly and intelligently waived his right to appeal and cannot be held responsible for the judgment of non pros ending his appeal.

The majority holds that appellant waived his right to appeal because he waived his right to counsel. A waiver of the right to counsel does not establish a waiver of the right to appeal. Moreover, the record demonstrates that appellant never waived either his right to counsel or his right to appeal. In holding that non-cooperation with appointed counsel establishes a waiver of both the right to counsel and the right to appeal, the majority ignores the basic principle that waiver of either right must be knowing and intelligent, with a full understanding of the consequences of the decision. Because the result reached by the majority is unsupported by our precedents and manifestly unjust, I dissent.

Appellant was convicted by a jury of murder of the first degree. After the verdict, appellant's trial counsel, Gerald E. Ruth, Public Defender, filed and argued post-verdict motions which were denied. On August 19, 1970, appellant filed a petition with the trial court seeking to remove Ruth as counsel. The court denied the petition on September 24, 1970. Acting upon the advice of two representatives of the Para-Professional Law Clinic in Graterford Prison, appellant filed his own direct appeal from the judgment of sentence to this Court on November 12, 1970. On December 31, 1970, appellant wrote to this Court requesting a continuance of the case. We agreed to continue the case until the April 1971 session.

After his conviction in late 1969, appellant wrote to Ruth requesting the trial transcript and all records in his case. At the post conviction hearing, appellant testified that he demanded the documents because he was "disgusted" with Ruth's efforts and had instead obtained the assistance of the Para-Professional Legal Aid Clinic. Ruth replied on October 15, 1969, advising appellant he would be unable to provide effective representation on appeal if he released the requested material. On November 29, 1969, and January 14, 1971, appellant repeated his demands. Finally, on February 5, 1971, Ruth sent appellant the materials. On April 29, 1971, this Court again continued the case and ordered the trial court to appoint counsel to represent appellant on appeal. Notwithstanding the disagreements between appellant and

Ruth, the trial court, on June 3, 1971, again appointed Ruth to represent appellant. On June 8, 1971, and June 25, 1971, Ruth requested that appellant return the transcript and records so that Ruth could proceed with the appeal. Appellant did not comply with the request. Consequently, on March 6, 1972, Ruth petitioned this Court for leave to withdraw. This petition was granted on March 20, 1972, and on March 28, 1972, counsel advised appellant of the withdrawal. On May 8, 1972, this Court again continued the appeal until May, 1973. On November 22, 1972, a member of the Para-Professional Legal Aid Clinic requested on appellant's behalf that the trial court appoint counsel for the purpose of proceeding with the appeal. The court's response on November 29, 1972, simply referred to the June 3, 1971, order wherein Ruth had been re-appointed. Finally, on May 21, 1973, this Court entered a judgment of non pros for failure to proceed.

On September 3, 1974, appellant filed a petition under the Post Conviction Hearing Act.[1] Another public defender was appointed to represent appellant. Appellant, by letter, requested that other counsel be appointed, contending that his representation by the assistant public defender created a conflict of interest because appellant had alleged that the former Public Defender, Ruth, had been ineffective. The court appointed new counsel. It then held a hearing on March 4, 1975, in which it refused to consider any issue other than whether appellant's failure to perfect and pursue his direct appeal from the judgment of sentence was the result of ineffective assistance of counsel. By order of October 21, 1975, the court held that appellant knowingly and intelligently failed to raise and pursue on appeal the trial issues included in the P.C.H.A. petition, and that he had failed to prove the existence of extraordinary circumstances to justify such failure. 19 P.S. § 1180–4 (Supp.1977); *Commonwealth v. Waddy,* 463 Pa. 426, 345 A.2d 179 (1975); *Commonwealth v. Wideman,* 453 Pa. 119, 306 A.2d 894 (1973). This appeal followed.

1. Act of January 25, 1966, P.L. (1965) 1580, §§ 1 et seq., 19 P.S. §§ 1180–1 et seq. (Supp.1977).

It is not disputed that appellant's actions in requesting and retaining the trial transcript were taken on the advice of the Para-Professional Legal Aid Clinic, and that appellant believed the clinic was pursuing his appeal. Therefore, I cannot conclude that appellant has intelligently and knowingly waived his right to appeal. The record shows that at all times appellant intended to pursue his appeal and for that purpose obtained the assistance of the prison para-professional legal aid clinic.

The majority incorrectly concludes that appellant's failure to cooperate with counsel demonstrated a knowing and intelligent waiver of the right to appeal. As long as a state provides for appeals from criminal convictions, the right of every defendant to appeal a conviction is constitutionally protected. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Moreover, the decision to appeal, like the decision to plead guilty, to waive the right to counsel, to waive the right to trial by jury, or to testify on one's own behalf is personal to the defendant. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). See *Commonwealth ex rel. Robinson v. Myers,* 427 Pa. 104, 232 A.2d 220 (1967); ABA Project on Standards for Criminal Justice, Standards Relating to Criminal Appeals § 2.2(b) (Approved Draft, 1970). See generally Comment, Criminal Waiver: The Requirement of Personal Participation, Competence and Legitimate State Interest, 54 Calif.L.Rev. 1262 (1966); *Commonwealth v. McGrogan,* 449 Pa. 584, 297 A.2d 456 (1972).

Mr. Chief Justice Burger recently articulated the distinction which must be drawn in waiver analysis between decisions which are the responsibility of counsel and decisions personal to the accused:

"Although Noia, the habeas petitioner, was represented by counsel, he himself had to make the decision whether to appeal or not; the role of the attorney was limited to giving advice and counsel. . . . Because in both *Fay* [*Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)] and *Zerbst* [*Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)], important rights hung in

the balance of the *defendant's own decision,* the Court required that a waiver impairing such rights be a knowing and intelligent decision by the defendant himself." *Wainwright v. Sykes,* 433 U.S. 72, 92, 97 S.Ct. 2497, 2509, 53 L.Ed.2d 594 (1977) (concurring opinion) (emphasis in original).

In recognition of the personal nature of the decision whether to appeal and the importance of establishing that a waiver of the right is knowing and intelligent, we require the trial court, at the time of sentencing, to inform a defendant of his appeal rights, including the right to appointed counsel if he is indigent. Pa.R.Crim.P. 1405(b). Before we may find a waiver of the right to appeal "the accused must be aware of all of his rights incident to an appeal, and with such knowledge *intentionally* abandon or fail to exercise them . . . ." *Commonwealth v. Maloy,* 438 Pa. 261, 263, 264 A.2d 697, 698 (1970) (emphasis added). Accord, *Commonwealth v. Wilson,* 430 Pa. 1, 241 A.2d 760 (1968); *Commonwealth v. Stewart,* 430 Pa. 7, 241 A.2d 764 (1968).

Here, it is patently clear that appellant never knowingly and intelligently waived his right to appeal. On the contrary, appellant has since 1969 attempted to appeal his judgment of sentence. He refused to cooperate with Ruth because he felt Ruth was not furnishing adequate representation. Appellant sought the advice of members of the prison para-professional legal aid clinic, who appellant thought were pursuing his appeal. Appellant repeatedly sought to have counsel appointed to pursue his appeal, yet the trial court responded initially by re-appointing trial counsel and later by failing to appoint any counsel on the mistaken assumption that Ruth was still representing appellant. Shortly after his direct appeal was non prossed, appellant filed a petition under the Post Conviction Hearing Act.

It is unreasonable to find from these facts a valid waiver of appellant's constitutionally protected right to appeal. However ill-advised, appellant's actions did not constitute a knowing and intelligent waiver. Appellant's actions, taken

for the express purpose of appealing his conviction, were wholly inconsistent with an intentional abandonment of his right to appeal.

Since appellant never waived his right to appeal, he may be denied that right only if he may fairly be held responsible for the entry of the judgment of non pros. The record is clear that he may not. The record shows that at all times appellant was attempting to obtain counsel who would actively prosecute his appeal, and proceeded pro se only after mutually unsatisfactory counsel was reappointed. In these circumstances, I cannot hold him responsible for the non pros.

A defendant who knowingly and intelligently determines to reject counsel and represent himself is responsible for his own errors in pursuing his case, and is not entitled to relief based on his own ineffectiveness. *Faretta v. California,* 422 U.S. 806, 836 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975). However, no less than with the decision to waive the right to appeal, before a defendant may be held to have waived his right to counsel in favor of self-representation "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that, 'he knows what he is doing and his choice is made with eyes open.'" Id. at 835, 95 S.Ct. at 2541. The American Bar Association suggests that such a decision be found knowing and intelligent only after an on-the-record colloquy demonstrating that the defendant decided to represent himself and completely understood the consequences of that decision. See American Bar Association Standards Relating to The Function of the Trial Judge § 6.6 (Approved Draft, 1972).[2]

Assuming such an on-the-record colloquy is not required by the Federal Constitution or by state law, the facts of this

**2.** "§ 6.6 The defendant's election to represent himself at trial.

A defendant should be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the trial judge makes thorough inquiry and is satisfied that he

(i) has been clearly advised of his right to the assistance of counsel, including his right to the assignment of counsel when he is so entitled;

case negate any conclusion that appellant knowingly and intelligently elected to represent himself. Although appellant indicated his desire that Public Defender Ruth be removed from his case, nothing in the record suggests that appellant ever intended to refuse any counsel and exercise his right to self-representation. Indeed, his subsequent request for counsel, made through the para-professional clinic, precludes such a finding. Regardless of whether appellant was entitled to have Ruth removed and successor counsel appointed, appellant's non-cooperation with Ruth establishes neither a knowing and intelligent decision to exercise a right of self-representation or a knowing and intelligent decision to waive his right to appeal.

Because appellant did not intentionally abandon or fail to pursue his appeal, *Commonwealth v. Maloy,* supra, or knowingly and intelligently elect to represent himself without assistance of counsel, *Faretta v. California,* supra, he cannot constitutionally be held responsible for the entry of the non pros and the loss of his appeal. I therefore dissent, and would grant appellant a new appeal as if timely filed.

MANDERINO, J., joins in this dissenting opinion.

(ii) possesses the intelligence and capacity to appreciate the consequences of this decision; and
(iii) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case."